AYRES, Judge.
This is an action for damages for trespass. Defendant was charged with having entered upon lands of plaintiffs in moral bad faith and, in the process of clearing a portion thereof, with having destroyed or removed therefrom a designated quantity of merchantable timber. Defendant admitted the trespass, but asserted his good faith in so doing. The issues were thus reduced to the question of the quantum of an award of damages gauged by the nature of defendant’s faith, that is, whether good or bad, and as to defendant’s rights to an offset of costs and expenses against plaintiffs’ claims.
The trial court found defendant acted in legal bad faith and awarded plaintiffs *321 damages in the sum of $3,744.00, predicated on the stumpage value of the timber. From this judgment defendant appeals and complains of the court’s conclusion that he was not acting in good faith and of the court’s failure to allow, as an offset or credit, $3,393.25 as the cost of the destruction of the timber or its cutting or removal which effected a clearing of plaintiffs’ lands. Plaintiffs have answered the appeal and seek an increase in the award because of defendant’s alleged moral bad faith and for (1) the loss of hunting rights on the property, (2) the diminution of the aesthetic value of the lands produced by destruction of the timber, and (3) the mental distress, pain, anguish and related mental suffering occasioned by the trespass.
No substantial issue is presented as to the quantity of the timber destroyed, or removed, despite a conflict in the testimony in that regard, nor as to the timber’s stum-page or converted value.
The record discloses that defendant purchased from Alice Curtain through her agent and broker, Joel C. Dobson, a tract of land in Madison Parish comprising 70 acres, more or less. This land was pointed out to defendant by Dobson who located it through the use of a map or blueprint furnished him by the owner. Defendant engaged the services of a surveyor licensed in the State of Mississippi, but not qualified in Louisiana, to survey the property. No starting point was established at the beginning of this survey. The property surveyed was the same as that pointed out by Dobson. The property, the subject matter of the sale, was in fact located a mile east of the land pointed out and surveyed.
Defendant engaged the services of Charles H. Foster, no relation of plaintiffs, as an independent contractor to clear the land and place it in a state for cultivation for a price of $52.50 per acre. Foster entered upon the land, pointed out and surveyed, with his equipment and cleared an area thereof comprising 52.3 acres, upon which the trees were uprooted, pushed down, windrowed, and burned. The timber on the remaining 18.5 acres was win-drowed but not burned.
Several days after the clearing operations began, defendant, accompanied by another who was interested in locating timber that he might purchase, called on Willie Bea Foster, who related that she had learned defendant was clearing land belonging to her and other plaintiffs. She made no demands that the work be stopped. Defendant informed her that he had purchased the property and had had it surveyed, whereupon she made no further protests but replied, “Well, O. K. then.” Nevertheless, defendant was informed on other occasions, as the work progressed, that he was clearing the wrong land. At first he called his surveyor, who assured him that the survey was correct. Defendant then sought the services of a Louisiana surveyor located at Winnsboro who promptly checked the property and informed defendant that he was, in fact, clearing the wrong property. During the delays which ensued, following notification that he had entered upon the wrong land, defendant pursued his clearing operations. When he was finally convinced that he was upon the wrong property, near completion of the operations, defendant admitted that fact to Willie Bea Foster.
The record makes it clear that, to defendant’s knowledge, Dobson was not fully acquainted with the property he had sold, and that the survey was made without the establishment of a starting point. In this situation, though defendant believed himself to be the owner of the property, he should have known otherwise, either from information available to him or from other ascertainable facts which would have placed a reasonably prudent person on notice.
After having been informed that he was clearing the wrong property, defendant was in bad faith in continuing with his operations without assuring himself that he was on the right property. This is particularly true in view of his knowledge that *322 defendant’s agent was not acquainted with the property he had pointed out, and that the surveyor had no proved or established point of beginning for his survey. This, we think, as did the trial court, establishes that defendant was in legal bad faith in trespassing upon plaintiffs’ property, and he must be so held. Coastal Transmission Corporation v. Lejeune, 148 So.2d 111, 114 (La.App., 3d Cir. 1962).
 With reference to plaintiffs’ proof of damages, it can be said, without any serious question of doubt, that they have failed to establish with legal certainty the diminution of value of the property as a result of the destruction of the timber; they made no showing whatsoever of the ornamental character of the trees. The same may be said of the items of loss with reference to the aesthetic value of the trees and as to the humiliation, grief, and worry attributable to the removal of the timber. These items were properly rejected. The latter does not constitute a legitimate item of damages. Anders v. Tremont Lumber Company, 171 La. 1, 129 So. 649 (1930).
 The claim for damages for the loss of hunting rights on the land was denied primarily for lack of certainty. We find no error in the rejection of this item. Plaintiffs’ desire that the character of the property not be altered or disturbed and changed from woodland to open, agricultural land constitutes no basis for the allowance of damages. Such an award must be predicated upon actual damages sustained to the property itself. Thus, the question of damages relates solely to the timber destroyed or removed. While its quantity and value constituted a subject for conflicting testimony, these, we think, were adequately established by the testimony of the only expert produced as a witness. He found that 114,320 board feet (log scale) of timber were destroyed and that 210 cords of pulpwood were cut and removed from the property. This witness valued the timber at the stump at $30.00 per thousand board feet or, in its converted state, at $39.00 per thousand board feet. The pulpwood was valued at $1.50 per cord.
 In cases of legal bad faith the trespasser is charged with the converted or manufactured value of the timber less the cost of production or manufacture. Blanchard v. Norman-Breaux Lumber Co., 220 La. 633, 57 So.2d 211 (1952); Quatre Parish Co. v. Beauregard Parish School Board, 220 La. 592, 57 So.2d 197 (1952); Coastal Transmission Corporation v. Lejeune, supra; Dendinger Inc. in Liq. v. Thompson & Thompson F. Prod., 94 So.2d 62 (La.App., 1st Cir. 1957).
The value of 114,320 board feet of the timber destroyed, at the converted rate of $39.00 per thousand board feet, and of 210 cords of pulpwood, at $1.50 per cord, is $4,773.48. From this sum defendant insists he should be allowed, as an offset or credit, the sum expended in clearing and improving plaintiffs’ property. Reliance is placed on the principle of unjust enrichment. If this timber had been cut and sold, the trespasser, if he were in legal bad faith, would be allowed to deduct the cost of converting the timber. Since there was no conversion of the timber, it appears appropriate that the cost of the clearing should be deducted from the converted value of the timber, particularly in view of the fact that plaintiffs have received the benefit of the expenditures in the enhanced value and in the increase in the rental value of their lands.
Though the damages established to have resulted from defendant’s trespass were shown to have been occasioned only to the timber destroyed or removed, this is not strictly a' trespass involving solely the cutting and removal of timber. The trespass consists of the entry upon and the clearing of plaintiffs’ property. From defendant’s efforts and expenditures, plaintiffs have reaped a benefit. Their property has been improved and enhanced in value with a corresponding increase in its actual or potential rental returns. As a tres *323 passer, defendant would probably not be entitled to a recovery of his expenditures, but the amount thereof may be claimed as an offset against a claim made against him for damages. Otherwise, plaintiffs, by a recovery against defendant, would be doubly paid: (1) by the improvement of their property at defendant’s expense and (2) by an award of damages levied against him.
A quantity of stave bolts was manufactured from the timber severed from the land. These bolts brought $36.75, which was paid to plaintiffs through Willie Bea Foster. Defendant should be credited with this sum also.
As a matter of equity, defendant is entitled to an offset of $3,430.00 against plaintiffs’ claim of $4,773.48.
Thus, the judgment appealed is amended by reducing plaintiffs’ award against defendant to the sum of $1,343.48 and, as thus amended, it is affirmed. Plaintiffs-appellees are assessed with the cost of the appeal.
Amended and affirmed.