350 So.2d 1265 (1977)
Alvin W. McGEE et al., Plaintiffs-Appellants-Appellees,
v.
SECO TIMBER CO., Defendant-Appellee-Appellant.
No. 6125.
Court of Appeal of Louisiana, Third Circuit.
October 14, 1977.
*1266 Ryder & Deshotels, by Errol D. Deshotels, Oberlin, for plaintiffs-appellants-appellees.
John P. Navarre, Oakdale, for defendant-appellee-appellant.
Before HOOD, CULPEPPER and GUIDRY, JJ.
*1267 GUIDRY, Judge.
In this suit plaintiffs, Alvin W. McGee and Katherine Wainwright, seek to recover damages for wrongful trespass and conversion of timber upon their respective properties located in Allen Parish. Security Timber Company, Inc. (hereinafter referred to as SECO), is made a defendant to the action along with two of its officers, Charles Wale and Tallie Perkins. After trial on the merits, judgment was rendered by the trial court holding only the corporate defendant liable to plaintiffs, the trial judge finding there was no evidence which would attach personal responsibility to the individual defendants. The trial judge found that timber had in fact been cut from the western portions of plaintiffs' land[1] and that the defendant trespasser was in good faith. Pursuant to these findings the trial court rendered judgment in favor of plaintiffs in the amount of $1,000.00 each to Alvin W. McGee and Katherine Wainwright. All parties have appealed from the judgment, plaintiffs claiming the award is too low, and defendant claiming that the award is excessive.
Plaintiffs do not question the correctness of the judgment insofar as it dismisses their demand against the individual defendants.
We agree with the trial judge's finding that the individual defendants should not be cast in judgment.
The sole issues presented on this appeal are whether the quantum awarded for the alleged timber trespass is correct, and also, whether or not plaintiffs are entitled to recover additional damages for diminution in value of their respective properties, mental anguish, anxiety, worry and attorney fees.
The facts giving rise to this litigation are not seriously in dispute. The evidence shows that plaintiffs, Alvin W. McGee and Katherine Wainwright, are owners of adjacent tracts of land located in Allen Parish. The property is located between Oakdale and Oberlin, La., and lies immediately east of U.S. Highway 165. The McGees own approximately 5.37 acres (hereinafter referred to as the McGee tract) which is to the north of and adjacent to the 4.16 acres owned by Katherine Wainwright (hereinafter referred to as the Wainwright tract). On or about June 3, 1972, SECO purchased the timber on a tract of land owned by a Mr. Virgil Reeves. The Reeves property lies adjacent to the western boundary of the McGee and Wainwright tracts. The timber deed describes the property as follows:
"All merchantable timber 8" in diameter 10" from the ground being on the following described land SW1/4 of SW1/4 Sec 32; SE of SW Sec 32-T3S-R3W lying west of M.O.P.R.R., Less 10 ac to McGee & 3 ac for R/W."
It is alleged by plaintiffs that on or about May 30, 1973, persons cutting timber on the Reeves property at the direction of SECO crossed over onto the western portions of the McGee and Wainwright tracts and cut certain timber that was growing there.[2] Plaintiffs also allege that defendant's trespass was intentional and constitutes a willful tort. Defendant does not deny that the trespass did take place, but claims that it was acting in good faith.
Turning first to the issue of the proper quantum to be allowed for the timber trespass, we find that the criterion which is to be followed in the assessment of damages for a timber trespass is well settled. In the case of Kennedy v. Perry Timber Company, 219 La. 264, 52 So.2d 847 (La.1951) the court set forth the criterion to be applied:
"The measure of damages allowable for the unlawful cutting of timber is well settled in this State. If the trespass has *1268 been reckless and willful, the trespasser is said to be guilty of moral bad faith and is liable for the converted value of the timber without allowance or deduction for costs and expenses. In cases where the trespasser believes himself to be owner but should have known otherwise, either from information available to him or other ascertainable facts which would have placed a reasonably prudent man on notice, he is held to be in legal bad faith and the actual expenses incurred by him in converting the timber are to be deducted in assessing the damages. And in cases where the trespasser is in good faith, that is, where he believes that the timber belongs to him and there is no valid reason for him to suppose otherwise, he is liable only for its stumpage value."
Considering the evidence in the record in light of this well-settled criterion, we conclude that the damages awarded are grossly excessive.
As shown by the Kennedy case, supra, the good faith or bad faith of the defendant in a timber trespass case has a direct bearing on the amount of damages to be awarded. Being in good faith does not relieve the defendant from liability, but it does affect the amount of damages for which he must respond.
As aforesaid the trial court found defendant to be in good faith. Our careful examination of the record prompts us to conclude that the defendant acted in legal bad faith.
The evidence convinces us that there was no clearly defined boundary separating the Reeves property from the western portions of the McGee and Wainwright tracts. The evidence indicates that the area involved in the trespass is lower than the rest of the plaintiffs' property and is frequently covered by standing water. It is overgrown with briars and other growth and is what is frequently referred to as a slough. The record indicates that the western boundary of plaintiffs' property may have at one time been marked by one or more standing fences, however at the time of the trespass in May of 1973, these fences, for the most part, were down and not readily visible.
Although we agree with the trial court that the trespass was unintentional, the evidence also preponderates to the effect that the defendant made only minimal efforts to ascertain the correct boundary separating the Reeves property from the McGee and Wainwright tracts. Though the record does contain testimony that plaintiffs' western boundaries were described to one of defendant's officers by Mr. Reeves, the evidence shows that the precise boundary was never clearly ascertained. Defendant could have easily contacted the adjacent property owners or taken other measures to insure that the timber would be harvested from the correct property. We find that the defendant did not take the proper precautions that were called for in this situation. Thus, we hold that the defendant is to be considered to be in legal bad faith, that is, he believed that he was on the correct property, but could have ascertained otherwise. Terral v. Riley, 293 So.2d 912 (La.App. 2nd Cir. 1974). Therefore the measure of damages to which plaintiffs are entitled is the converted value of the timber, less the costs and expenses of the conversion.
We determine on the basis of the record that the highest actual value placed on the timber removed was by defendant's expert witness, Mr. Robert E. Richardson. Although the defendant corporation testified that it only received $46.00 for the timber cut, other evidence produced by the corporation itself, through Mr. Richardson's testimony, indicates that the value of the timber cut was $177.09 for the McGee tract and $161.40 for the Wainwright tract. This is the only proof in the record as to the converted value and it is more equitable to allow plaintiff the higher of the two values.[3]
*1269 By finding the defendant in legal bad faith, ordinarily he would be entitled to deduct from the award the costs and expenses of conversion. There is no credible evidence in the record to indicate with any degree of certainty what defendant's costs and expenses were in connection with the removal of this timber. In the absence of proper proof as to these costs and expenses, we will base our award on the converted value of the timber as stated by Mr. Richardson without allowance for the cost of conversion.
We finally note that there is no suggestion in the record that the timber taken from the McGee and Wainwright tracts was not sold for its fair market value, nor is there any indication that any fraud was practiced on plaintiffs.
In his written reasons for judgment the trial judge simply made an in globo award of damages without itemization. It may be that the trial court awarded damages in excess of the above values on the basis of plaintiffs' allegations that their properties were diminished in value and that each suffered mental anguish, anxiety and worry.
We conclude that plaintiffs, under the circumstances of this case, are not entitled to a damage award for any mental anguish, anxiety and worry which each may have suffered.
In Foster v. Beard, 221 So.2d 319 (La. App. 2nd Cir. 1969), the defendant was found to be in legal bad faith. The court rejected plaintiff's claim for mental anguish by stating:
"With reference to plaintiffs' proof of damages, it can be said, without any serious question of doubt, that they have failed to establish with legal certainty the diminution of value of the property as a result of the destruction of the timber; they made no showing whatsoever of the ornamental character of the trees. The same may be said of the items of loss with reference to the aesthetic value of the trees and as to the humiliation, grief, and worry attributable to the removal of the timber. These items were properly rejected. The latter does not constitute a legitimate item of damages. Anders v. Tremont Lumber Company, 171 La. 1, 129 So. 649 (1930). (emphasis added)
"Plaintiffs' desire that the character of the property not be altered or disturbed and changed from woodland to open, agricultural land constitutes no basis for the allowance of damages. Such an award must be predicated upon actual damages sustained to the property itself. Thus, the question of damages relates solely to the timber destroyed or removed." (emphasis added)
Our review of the applicable jurisprudence indicates that under certain circumstances, landowners may recover damages for mental anguish and trespass done to their property. The cases allowing such recovery involve situations where the defendant trespassers were found to be in moral bad faith or to have committed a willful and wanton trespass on plaintiffs' property. Knoll v. Delta Development Company, 218 So.2d 109 (La.App. 3rd Cir. 1969, writ refused); Campbell v. Gray, 294 So.2d 841 (La.App. 2nd Cir. 1974); Turner v. Southern Excavation, Inc., 322 So.2d 326 (La.App. 2nd Cir. 1975); and Dickerson v. R.J.M. Pipeliners, Inc., et al., 331 So.2d 501 *1270 (La.App. 2nd Cir. 1976). We find, as the trial judge apparently did, that defendant, SECO, was not in moral bad faith. In order to hold the defendant in moral bad faith, it would have been necessary to find that the defendant had consciously performed some wrongful act in cutting timber on plaintiffs' lands. The case of Estate of Boyett v. L.L. Brewton Lumber Co., 223 So.2d 495 (La.App. 2nd Cir. 1969), further explains the definition of "moral bad faith" as stated in the Kennedy case, supra. The court stated:
"However, the Supreme Court in the Kennedy case, supra, has ruled that to consider one in moral bad faith the trespass must not only be reckless but must be willful and wanton. The meaning usually attributable to the words willful and wanton require that the party acting willfully or wantonly possess an intent to perform the act with utter disregard for the rights of others. It is usually required that he be conscious of the wrongfulness of his act. We must profess that it is very difficult to evaluate the state of mind of an individual to determine his intent at some prior time. This is a classic example of the ideal situation for the applicability of the rule frequently quoted by the appellate courts of this State that the finding of fact made by the trial judge who had the opportunity to see, hear and personally evaluate the credibility of the witnesses, should not be disturbed unless he has committed manifest error." (emphasis in original)
We do conclude that plaintiffs are entitled to damages, in addition to the converted value of the timber removed, for the diminution in value of their respective properties. Although plaintiffs offered no testimony showing diminution in the values of their respective properties, the record does contain evidence adduced by defendant which was uncontradicted that each of the plaintiffs sustained damages in the amount of $150.00 for diminution in the value of their properties. Such recovery is allowable upon a proper showing of adequate proof. See Foster v. Beard, supra, and Frusha v. Jackson, 228 So.2d 197 (La.App. 3rd Cir. 1969). We accept the testimony of Mr. Leonard H. Thomas, based on his appraisal, that each plaintiff suffered diminution in property value in the amount of $150.00. We will allow plaintiffs these damages.
Plaintiffs contend that the trial court erred in its refusal to award attorney's fees. We find no merit in this contention. Generally, attorney's fees are not allowed in the absence of a contract or statute authorizing same. Although there are jurisprudential exceptions to this general rule the instant action does not fall within one of these exceptions.
Finally, we observe that prior to trial of this matter the defendant tendered into the registry of the court the exact amount of damages which we find are due to the plaintiffs. Considering this circumstance, we believe that it would be equitable to assess the court costs incurred in this matter, both on the trial level and on appeal, one-half to plaintiffs and one-half to defendant.
For the reasons assigned the judgment of the trial court is affirmed but amended so as to reduce plaintiffs' award to $327.09 for Alvin McGee and $311.40 for Katherine Wainwright. The costs incurred both on the trial level and on appeal are assessed one-half to plaintiffs-appellees and one-half to defendant-appellant.
AMENDED AND AFFIRMED.
HOOD, J., concurs in the result.
NOTES
[1] The record does not precisely indicate the exact amount of acreage involved in the trespass, but we determine that between ½ to 2 acres of plaintiffs' land were involved.
[2] Evidence adduced at trial by plaintiffs shows that there were 67 trees cut on the McGee tract and 77 trees cut on the Wainwright tract. Defendant's evidence indicates 61 trees for the McGee tract and 53 trees for the Wainwright tract. The trees were of varying species, mainly oak, gum and pine.
[3] At trial, plaintiffs introduced expert testimony through a Mr. Robert Spears as to the value of the timber as it left the manufacturer. This clearly is not the proper criterion for the assessment of damages. In Terry v. Butler, 240 La. 398, 123 So.2d 865 (La. 1960), the Supreme Court clarified some of the language it had employed in Kennedy, supra. The court stated: "While in the Kennedy case we did not spell out what was meant by the term "converted value" used in referring to the trespasser in moral bad faith, the remainder of the quoted language clearly shows that the court intended that the owner would be entitled to the value of the product as converted by the trespasser." (emphasis in original) Addressing itself to the term "manufactured value", the court then stated: "We recognize, of course, that in some decisions cited by plaintiffs the court has used the term "manufactured value" in assessing damages for timber wrongfully taken. But obviously it was so employed for the reason that the timber had been changed through the efforts and expense of the trespasser into products more refined than mere logs, poles or pulp wood." (emphasis in original). In the case at bar, the evidence clearly shows that the defendant merely sold the timber to a saw mill and made no effort to refine the products.