391 So.2d 928 (1980)
Ernest F. GARRETT, Plaintiff-Appellant,
v.
MARTIN TIMBER COMPANY, INC., Defendant-Appellee.
No. 14354.
Court of Appeal of Louisiana, Second Circuit.
December 2, 1980.
Rehearing Denied January 13, 1981.
*929 Campbell, Campbell & Johnson by John T. Campbell, Minden, for plaintiff-appellant.
Watson, Murchison, Crews, Arthur & Corkern by R. Raymond Arthur, Natchitoches, for defendant-appellee.
Before PRICE, JASPER E. JONES and FRED W. JONES, Jr., JJ.
En Banc. Rehearing Denied January 13, 1981.
PRICE, Judge.
Plaintiff, E. F. Garrett, appeals the judgment of the district court rejecting his demand for damages allegedly caused by the *930 illegal cutting of timber by the defendant, Martin Timber Company, Inc., on land which Garrett claims to possess as owner. We reverse and award plaintiff damages for the reasons assigned.
Garrett is the record owner of a tract of unimproved timber land situated partially in Section 33, Township 17 North, Range 8 West, and partially in Section 4, Township 16 North, Range 8 West in Bienville Parish, Louisiana. Directly to the east and contiguous to Garrett's property is a tract owned by Ellis S. Martin (not a party to this suit).
On January 1, 1979, Martin sold the right to cut timber on his tract to defendant. After surveying the Martin tract to identify the extent of the tract to be cut, defendant's loggers began operations on the Martin tract in early February 1979. They cut timber up to the north-south section line of Section 33, which was shown as the ideal boundary between the Martin tract and the lands owned by plaintiff. The survey also showed the existence of an old fence running parallel to the ideal boundary which was situated approximately 33 feet to east of the line at the northwest of Martin's tract and 3 feet east of the line at the southwest corner of Martin's tract. Defendant's loggers crossed over this old fence and cut the timber standing between the fence and the ideal boundary as marked by the surveyor.
On or about February 10, 1979, Garrett discovered the cutting operations. Claiming that the old fence had been the recognized boundary between his and Martin's land for more than 30 years, Garrett filed suit on February 20, 1979, seeking damages for the destruction of the fence and the cutting of timber situated to the west of the fence line. Garrett prayed for judgment recognizing him as owner of the strip of land lying between the old fence and the ideal boundary as determined by the survey and to have the old fence restored and declared the correct boundary between his and Martin's property.
The trial court concluded that Garrett's suit was in reality a petitory action since he was asking to be recognized as owner of the disputed strip by 30 years adverse possession. La.C.C.P. Art. 3651 provides that a petitory action is brought "against another who is in possession or who claims the ownership" of a tract of land adversely. Since the defendant-timber company was not in possession of the disputed strip and did not claim ownership, Garrett's suit was dismissed. The lower court further held that even if Garrett's suit could be classified as a separate action in trespass, he was not entitled to damages unless he could prove acquisitive prescription of the disputed strip. Garrett's ownership claim was based on 30 years adverse possession, and the trial court concluded that he had failed to prove possession up to the fence for the required period of time.
The following are the issues on appeal:
(1) Was the trial court correct in dismissing Garrett's suit as a petitory action?
(2) If the suit can be maintained as an independent action in trespass, must Garrett prove ownership of the disputed strip to recover?
(3) If Garrett's claim is based on possession, was he actually possessing the disputed strip at the time of defendant's cutting operations?
(4) What damages if any is Garrett entitled to?
NATURE OF GARRETT'S ACTION
Title II of Book 7 of the Louisiana Code of Civil Procedure contains the procedural law applicable to the so-called real actions in Louisiana. The nominate real actions outlined in Book II are four in number, i. e., the petitory action, the possessory action, the action of boundary, and the hypothecary action. In addition to these nominate real actions, there are others which have a close similarity but are not truly real actions. The existence of these "quasi-real" actions is recognized in the introductory comments to Title II:
No attempt has been made to include in this Title certain of the fringe actions which bear some resemblance to the real actions, such as the action of trespass, the *931 action to remove a cloud from title, and the action of specific performance.
A suit for damages for trespass is not one of the enumerated actions in the Code of Civil Procedure and therefore the strict pleading requirements applicable to real actions such as the petitory and possessory actions are inapplicable. See Harvey v. Havard, 287 So.2d 780 (La.1973).
In the present case, Garrett's petition was a self-styled "Suit for Damages." The trial court concluded that since Garrett alleged 30-year prescription, his suit should be dismissed as being a petitory action. This ruling overlooks the fact that the basis of Garrett's claim was that his possession of the disputed strip had been disturbed by the timber cutting operations of defendant. Although Garrett sought to be declared owner of the disputed strip, the thrust of his claim was that defendant had trespassed by crossing the old fence which was alleged to be the established boundary due to Garrett's adverse possession. This was an action in trespass and the trial court erred in dismissing Garrett's claim as being one governed by the procedural rules for petitory actions.
NECESSITY OF PROOF OF OWNERSHIP
In the trial court's written reasons for judgment an alternative reason for dismissing Garrett's action was that he had failed to prove ownership of the disputed tract. The trial judge was of the opinion that ownership must be proved in order to prevail in an action in trespass. Under the circumstances of this case, it was not incumbent upon Garrett to prove his ownership of the disputed strip of land.
While the action for trespass is a separate cause of action not addressed by the Code of Civil Procedure, when it is predicated on possession, as it is here, it is very similar to the possessory action. It has long been established that one in legal possession of land is entitled to bring a suit for damages against one who disturbs his possession. See Gillan v. Jones, 157 So.2d 598 (La.App. 2d Cir. 1963) writ denied 159 So.2d 284 (1964), and cases cited therein. In such an action the plaintiff need only prove that he was in legal possession of the land at issue; that his possession was disturbed by the defendant, and that he brought suit within one year of the disturbance.
Since Garrett's claim is based on possession and the adjoining landowner (Ellis Martin) is not a party to this suit, we pose no opinion as to the ownership of the disputed strip of land.
PROOF OF POSSESSION
Having determined that this is an action in trespass and that Garrett need not prove ownership in order to recover damages, the issue remains as to whether the requisite possession was proven. Pertinent to this inquiry are the following provisions of the Civil Code:
Art. 3436. Essentials of possession. To be able to acquire possession of property, two distinct things are requisite:
1. The intention of possessing as owner.
2. The corporeal possession of the thing.
Art. 3442. Preservation of an acquired possession by intent only. When a person has once acquired possession of a thing by the corporeal detention of it, the intention which he has of possessing, suffices to preserve the possession in him, although he may have ceased to have the thing in actual custody either himself or by others.
Art. 3443. Presumed intent to retain possession. This intention of retaining possession is always supposed, where a contrary intention does not appear decidedly; so that, although a person may have abandoned the cultivation of his estate, he shall not therefore be presumed to have abandoned the possession, but shall be presumed on the contrary to have the intention of retaining it, and shall retain it in fact.
The type of activity necessary to constitute corporeal possession of land differs with the nature of the property. Actions constituting corporeal possession on one type of *932 property may be insufficient to constitute corporeal possession on other property. See Hill v. Richey, 221 La. 402, 59 So.2d 434 (1952).
The tract of land described in Garrett's deed was a portion of a larger tract purchased by his father in 1940. Testimony by Garrett and his brother establishes that the Garretts built a fence completely enclosing this parent tract in 1941 or 1942. The land was utilized by the elder Garrett for farming and grazing cattle. It was apparent that the land had been farmed up to the fence. This was shown by the testimony of the defendant's management forester who observed old farm rows in the disputed area west of the old fence and east of the ideal boundary established by defendant's survey. These acts of possession by Garrett's father are pertinent because they show that the Garrett family always considered the fence to be the eastern boundary of their property. Running directly adjacent to the old fence on the west side (and east of the ideal boundary) was an access road which had also been plowed up as a fire lane. This road remains to the present.
The land was eventually partitioned and in 1963 Garrett purchased from his father that portion of the elder Garrett's land which lies adjacent to the tract now owned by Ellis Martin. Garrett testified that the fence had been maintained throughout the years until about 6 years before this suit. At about this point in time Garrett placed concrete markers on the fence line at the southeast and northeast corners of his property to mark the iron posts which were already present. Garrett and his wife testified that they regularly visited the property and walked along the disputed strip. It was apparently on one of these visits that Garrett discovered evidence of defendant's cutting operation.
The disputed strip in question was grown over with young trees and was not suitable for farming. Garrett's wife testified that the land had been used as a tree farm since it was bought in 1963. It is apparent that an act sufficient to constitute actual possession of this land would be somewhat less than that needed to constitute actual possession of farmland. We think the actions of Garrett as evidence by the record were sufficient to establish his legal possession of the disputed strip. The evidence is sufficient to show that Garrett possessed this land up to the old fence and had intended to treat the old fence as his eastern boundary since his acquisition of the land in 1963. It is undisputed that defendant is responsible for the timber cutting and Garrett filed suit within one year of these operations. Consequently, we conclude that Garrett is entitled to recover damages for defendant's activities which constituted a trespass.
DAMAGES
Garrett is seeking damages for the cost of building a new fence and the value of the timber which was removed. In addition, he seeks general damages for mental anguish allegedly incurred as a result of the trespass.
Defendant contends that the old fence is valueless since it would not contain cattle and was down in many places covered with pine straw. While this may be true, the old fence nevertheless had value to Garrett. The very fact that this fence had been in its present location for a long time makes it of value in that it marks the line long recognized by Garrett as his boundary.
Any compensation for replacing a fence has to be based on the cost of building a new one since one cannot build an old fence. Garrett recognizes that the fence was old, and therefore only seeks half of his estimated cost for materials to build a new one. He places this figure at $291.75. His estimated cost for labor is $200.00, which is a fair amount. However, these estimates are based on the cost of rebuilding the fence along the entire eastern boundary of Garrett's tract when the evidence discloses that defendant only trespassed on the southern half of the fence line. Taking this fact into consideration, we feel that a just award for replacing the fence actually disturbed together with labor costs would be $250.00.
There was conflicting evidence as to the value of the timber removed from the strip *933 of land in question. William F. Wieger, forest manager for defendant, testified that the value of the timber taken was $172.05. Garrett's estimate was based on an appraisal made by Lee Mudd, a forest management consultant. There is not a great deal of difference between the two estimates and under the circumstances we feel that Mudd's independent appraisal of $309.15 is appropriate. To this will be added $75.00 for Mudd's appraisal fee.
Garrett contends that defendant should be liable for three times the fair market value of the trees cut pursuant to La.R.S. 56:1478.1 which provides:
Trees, cutting without consent; penalty:
A. It shall be unlawful for any person to cut, fell, destroy or remove any trees, or to authorize or direct his agent or employee to cut, fell, destroy or remove any trees, growing or lying on the land of another, without the consent of the owner or legal possessor.
B. Whoever willfully and intentionally violates the provisions of Subsection A shall be liable to the owner or legal possessor of the trees for civil damages in the amount of three times the fair market value of the trees cut, felled, destroyed or removed.
C. Whoever violates the provisions of Subsection A in good faith shall be liable to the owner or legal possessor of the trees for three times the fair market value of the trees cut, felled, destroyed or removed, except however, that the provisions of this section shall apply only to trees cut or removed across ownership lines, marked boundary lines, or outside of designated cutting area lines, and that no provision herein shall apply to cutting operations within an area covered by a contract or agreement with the owner.
D. The provisions of this section shall not apply to the clearing and maintenance of rights of way or to utility service situations where a utility is acting in good faith to minimize the damage or harm occasioned by an act of God; the provisions of this Act shall not apply to land surveying by or under the direction of a registered professional land surveyor, duly registered under the laws of the state of Louisiana.
We do not feel that this is the proper case for application of the triple damages rule provided for by this statute. Subsection B is not applicable for we find no evidence that defendant "willfully and intentionally" cut timber from Garrett's land. Defendant had ordered a survey of Martin's land to ascertain the proper extent of the tract on which to cut and proceeded to cut only to this ideal boundary. Under these circumstances, we find defendant to have acted in good faith. The old fence was not visible in some places and it was not unreasonable on the part of the loggers to believe that the old fence was abandoned. Defendant's witnesses testified that it was not uncommon to find evidence of old fences on tracts of land upon which timber was to be harvested. In light of the condition of the fence and the good faith reliance on a survey conducted by a registered land surveyor, we feel that Subsection C of La.R.S. 56:1478.1 is not applicable either. The provision for triple damages is punitive in nature and such damages should be assessed only in cases where the defendant is clearly in violation of the provisions of the statute. See Shaffett v. Vicks, 385 So.2d 419 (La.App. 1st Cir. 1980). Therefore, the measure of damages to which Garrett is entitled is the fair market value of the timber cut.
Having concluded that defendant was a good faith trespasser, Garrett's claim for damages for mental anguish must be rejected. The cases allowing such recovery involve situations where the defendant trespassers were found to be in moral bad faith or to have committed a willful and wanton trespass on plaintiff's property. See McGee v. SECO Timber Co., 350 So.2d 1265 (La. App. 3d Cir. 1977).
For the foregoing reasons the judgment of the trial court is reversed and judgment is hereby rendered in favor of plaintiff, E. F. Garrett, and against defendant, Martin *934 Timber Company, Inc., in the amount of $630.02 plus legal interest from the date of judicial demand until paid. All costs, including this appeal, are assessed against the defendant-appellee, Martin Timber Company, Inc.